```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
STEVEN J. KELLY,                                            :
                                                            :
                              Plaintiff,                    :   **MEMORANDUM DECISION**
                                                            :   **AND ORDER**
             - against -                                    :
                                                            :   19-cv-741 (BMC)
NANCY A. BERRYHILL,                                         :
                                                            :
                              Defendant.                    :
                                                            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff seeks review of the decision of the Commissioner of Social Security, following a hearing before an Administrative Law Judge, that he is not entitled to Social Security Disability benefits under the Social Security Act.

Plaintiff raises four points of error. First, plaintiff contends that the ALJ failed to sufficiently develop the record. Second, plaintiff contends that the ALJ failed to give controlling weight to his treating physicians. Third, plaintiff contends that the ALJ's improperly weighted the consultative medical examiners' opinions. Fourth, plaintiff contends that the ALJ failed to base his residual functional capacity and other employment determinations on substantial evidence in the record. For the reasons stated below, plaintiff's motion for judgment on the pleadings is denied and the Commissioner's cross-motion for judgment on the pleadings is granted.

I.

Plaintiff first claims that the "ALJ neglected his duty to fully develop the record by failing to obtain psychotherapy and medication management treatment records." Specifically, plaintiff assigns error to the ALJ's decision not to obtain:

> Mr. Kelly's treatment records from biweekly psychotherapy sessions with Ms. Cipriano and other therapists at Interfaith Medical Center, where he was a psychiatric patient from December 2012 to November 2017.

and

> More than three years (38 months) of records from Mr. Kelly's monthly medication management sessions with several members of the psychiatry staff at Interfaith from the following periods:
>
> - November 20, 2012 to September 17, 2013,
> - December 11, 2014 to January 7, 2016,
> - January 7, 2016 to June 3, 2016,
> - June 3, 2016 to August 2, 2016,
> - August 2, 2016 to November 8, 2016,
> - November 8, 2016 to April 26, 2017, and
> - April 26 2017 to November 30, 2017.

According to plaintiff, "[t]hese records would have impacted the determination of disability, as they would have been material to the assessment of Mr. Kelly's residual functional capacity, including his ability to perform work-related activities under stress and to relate to others in the workplace." Regardless of the possible benefit to plaintiff's application that these records may have provided, their absence in the record cannot fairly be attributed to any failure by the ALJ.

"In making any determination with respect to whether an individual is under a disability or continues to be under a disability, the Commissioner of Social Security shall . . . develop a complete medical history of at least *the preceding twelve months* for any case in which a determination is made that the individual is not under a disability." 42 U.S.C. § 423(d)(5)(B) (emphasis added); see 20 C.F.R. § 404.1512(b) ("Complete medical history means the records of

2

your medical source(s) covering at least *the 12 months preceding the month in which you file your application*." (emphasis added)). Furthermore, "[c]ourts do not necessarily require ALJs to develop the record by obtaining additional evidence themselves, but often permit them to seek it through the claimant or his counsel." Rivera v. Comm'r of Social Sec., 728 F. Supp. 2d 297, 330 (S.D.N.Y. 2010) (citing cases).

Here, although plaintiff is correct that there is a lack of medical records unrelated to the social security disability proceeding itself,[1] the ALJ satisfied whatever duty he had to develop the record. To start out, the ALJ noticed immediately that there were missing records, to which plaintiff's attorney responded that he would seek said records:

> ALJ: All right. So the other thing I don't have is records. We don't have any records from Interfaith. They only go up to December. So you need the Interfaith records from 2015 to the present.
>
> ATTY: I believe our office made an effort to get them. Let me double check what's going on here.

The ALJ also specifically informed plaintiff and his counsel that he was "going to hold the record open for say a month" for them to "get a hold of those records." And the ALJ even went on to *advise* plaintiff on how to go about obtaining psychiatric records and provided resources to assist him in that task:

> So on the net – they have a way you can do it on the web. So, I tell you what I'm going to do, Mr. Kelly. I'm not too confident that [Interfaith is] going to get your records. So I'm going to give you a bar code to take to your psychological doctors and ask them to fax the records in the file. How is that?

In short, the ALJ appears to have gone above and beyond his obligation to develop the record in this case. See id. ("[T]he ALJ's request that plaintiff's attorney obtain the recent treatment records . . . fulfilled his obligations with regard to developing the record."). Whatever

---

[1] Indeed, although the total administrative record is over 450 pages, only a small fraction of that is made up of treatment notes and medical records from non-consultative sources.

gaps there may be here are solely attributable to plaintiff's inaction, as made abundantly clear in the hearing transcript. Furthermore, as plaintiff filed his application on May 7, 2014, there is no basis to claim that it was error for the ALJ not to seek materials created after that date. See 20 C.F.R. § 404.1512(b); Bushey v. Colvin, 607 Fed. App'x 114, 115 (2d Cir. 2015).

II.

Plaintiff next claims that the ALJ failed to give controlling weight to Mr. Kelly's treating sources. "[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)). If the ALJ does not afford a treating physician's opinion controlling weight, he must still "comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004).

Among the factors that the ALJ must consider when deciding whether to give a treating physician's opinion a certain weight are "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." Burgess, 537 F.3d at 129 (internal quotations and alterations omitted). If, however, "a searching review of the record" assures the reviewing court "that the substance of the treating physician rule was not traversed," the court should affirm the ALJ's decision despite his "failure to 'explicitly' apply the Burgess factors." See Estrella v. Berryhill, 925 F.3d 90, 96 (2d Cir. 2019).

4

Dr. Richard Storch, plaintiff's treating psychiatrist, filled out a limitations questionnaire on August 7, 2014, on behalf of plaintiff. He opined therein that plaintiff exhibited "distrust towards people in general; lack of concentration; eas[y] agitat[ation]; social withdrawal; [and] anxiety." He identified plaintiff's symptoms as, *inter alia*, decreased energy, flat or inappropriate affect, feelings of guilt, generalized persistent anxiety, mood disturbance, recurrent and intrusive recollections, persistent disturbances of mood or affect, apprehensive expectation, paranoid thinking, emotional withdrawal, maladaptive patterns of behavior, vigilance and scanning, and pathologically inappropriate suspiciousness or hostility. Dr. Storch ultimately concluded in the questionnaire that plaintiff was "unable to meet competitive standards" in nearly every category of aptitude needed to perform unskilled work, including maintaining attention for two hours, making simple work-related decisions, accepting instructions, getting along with co-workers or peers without unduly distracting them, and dealing with the stress of semiskilled and skilled work.

In a rather robust analysis, the ALJ afforded "limited weight" to Dr. Storch's opinion:

> While the evidence suggests that the claimant's impairments, including his schizophrenia, cause him some level of social problems, I find that the evidence as a whole fails to support Dr. Storch's overall findings. I first note that Dr. Storch's own treatment notes are not supportive of his severe estimates. Specifically, Dr. Storch determined that the claimant's global assessment of functioning (GAF) score was 55, which is indicative of only moderate functional impairment. I also note that his progress notes prior to his medical source statement show that the claimant was doing generally well, as he was described as well groomed, cooperative, and goal directed. Dr. Storch also noted that the claimant's level of consciousness was coherent and that his mood was "ok". Moreover, while he found that claimant exhibited some blocking, he found it was only mild. Based on Dr. Storch's evaluation, it is hard to reconcile the relatively extreme findings he provided in his medical source statement, with the generally banal findings submitted in his treatment notes. The difficulty with reconciliation is further compounded with the knowledge that Dr. Storch treated the claimant only once while standing in for another physician. Given Dr. Storch's limited engagement with the claimant, and the fact that the treatment notes generally

5

show no more than moderate limitations, I am unable to give Dr. Storch's opinion
more than limited weight.

Dr. Christianah Ogunlesi also submitted a questionnaire on plaintiff's behalf. She offered opinions therein that could both support and undermine a finding that plaintiff was disabled. For example, as to mood and affect, she opined that plaintiff was cooperative and stable, on the one hand, but that he was easily agitated, paranoid, and offended, on the other. She said that his attention and concentration was "fair to good," that his memory was "fair," and that his insight and judgment was "good." But also that he "can be very obsessive in his thinking, ordering, etc.," that he was "socially isolated," and that he "lives in fantasies in his mind." Although the ALJ briefly discussed Dr. Ogunlesi's report in his decision, he appears to have used it more as counterpoint evidence while analyzing another source not at issue here. Nevertheless, he noted the following:

> Dr. Ogunle[s]i provided a medical report, in which she noted that the claimant was cooperative, alert, coherent, and that his speech, thought organization and content were within normal levels. She also reported that the claimant's mood and affect were stable, even as she reported that he could be easily agitated and offended. Aside from that however, she reported that the claimant's attention, concentration, and judgment were good, he was oriented, and that his memory was fair. Again, the evidence shows that the claimant's impairments create various difficulties; however, Dr. Ogunle[s]i's report does not suggest that his impairments cause any marked restrictions.

Based on the foregoing, it is apparent that the ALJ did not err in assigning the opinions of Drs. Storch and Ogunlesi the weights he did. He carefully compared Dr. Storch's conclusions with the evidence in the record: Whereas Dr. Storch opined that plaintiff experienced social withdrawal, agitation, and paranoid thinking to the point where he was unfit for work, the ALJ pointed out that Dr. Storch's own treatment notes assess plaintiff as having "only moderate functional impairment." Likewise, although Dr. Storch opined that plaintiff had difficulty working within a schedule, making decisions, managing stress, and completing tasks, the ALJ

noted that Dr. Storch's treatment notes described plaintiff as doing generally well, and that he was well groomed, cooperative, goal directed, and coherent. On top of that, the ALJ correctly identified the lack of basis for giving Dr. Storch's opinion controlling weight where, in addition to ascribing to plaintiff severe limitations that were completely at odds with his previous treatment notes, he had only ever treated plaintiff on a *single* occasion "while standing in for another physician." Therefore, because Dr. Storch's opinion was "inconsistent with the other substantial evidence in [the] case record," the ALJ was within his discretion in not giving it controlling weight. See Burgess, 537 F.3d at 128.

Furthermore, contrary to what plaintiff implies, it seems the ALJ treated Dr. Ogunlesi's opinion with significant deference. Although it is not apparent, one way or the other, what specific weight the ALJ assigned Dr. Ogunlesi's opinion in arriving at his ultimate decision, it is clear that he believed the opinion supported a finding of not disabled. He relied upon it as a foil to the more dire report provided by plaintiff's social worker/therapist, Celeste Cipriano, who the ALJ concluded was not even "an acceptable medical source per Social Security regulations."

III.

Plaintiff also contends that the ALJ improperly weighted the consultative examiners' opinions. He argues that the "ALJ placed great weight on only one opinion, that of the State's non-examining state agency consultant, M. Brant, 'insofar as it is consistent with the evidence.'" But plaintiff maintains this was improper because Dr. Brandt's opinion "falls short under the [Burgess] Weight Factors." He further maintains that it was improper to only give partial weight to consultative examiner Dr. Deshaunta Johnson's opinion because the ALJ (1) ignored evidence, and (2) "misrepresented the opinion of Mr. Kelly's treating physicians in demoting the weight granted Dr. Johnson."

7

A non-examining medical source's opinion may "override treating sources' opinions, provided they are supported by evidence in the record." See Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir. 1993). "Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion." 20 C.F.R. § 404.1527(c)(4). Moreover, "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." Veino v. Barhart, 312 F.3d 578, 588 (2d Cir. 2002).

The ALJ spent very little time discussing Dr. Brandt's opinion:

> Findings of fact made by State agency medical professionals regarding the nature and severity of an individual's impairments are given probative weight as expert opinion evidence by a non-examining source. Following a review of the medical record, Dr. Bran[d]t, determined that the claimant's mental impairments caused no more than moderate functional impairment. After considering the evidence, I afford the State agency's conclusion great weight insofar as it is consistent with the evidence.

But even from the terse analysis above, it's evident that the ALJ afforded Dr. Brandt's opinion proper weight. Indeed, by only giving the opinion great weight "insofar as it is consistent with the evidence," the ALJ's language tracked the regulation's instructions to give a non-examining medical source weight to the extent it is consistent with "the record as a whole." See 20 C.F.R. § 404.1527(c)(4).

Moreover, plaintiff is wrong to suggest that such non-examining sources should be scrutinized under the first two Burgess factors – which relate to a source's relationship to the claimant – as those apply to *treating* physicians. Indeed, it is by those factors that an ALJ may adjust the weight of a treating physician's opinion below its presumptive controlling position. It is already presumed to be true that a non-examining source has never treated a claimant. And because the remaining factors under Burgess are largely co-extensive with the considerations of 20 C.F.R. § 404.1527(c), which all lean in favor of Dr. Brandt's opinion, the ALJ did not err.

8

Turning to Dr. Johnson's opinion, the ALJ noted that Dr. Johnson "diagnosed the claimant with schizoaffective disorder and seizure disorder" from which she opined that plaintiff's impairments could significantly interfere with his ability to function on a daily basis. Specifically, Dr. Johnson noted a marked impairment in plaintiff's ability to relate adequately with others and to deal with stress. Nevertheless, the ALJ only gave "Dr. Johnson's opinion [no more than] partial weight, insofar as it is consistent with the evidence." The ALJ found that

> there is no evidence to suggest that the claimant has more than moderate limitations in these areas. During the evaluation, Dr. Johnson noted that the claimant used public transportation (a train) to get to the appointment. She also reported that the claimant socialized with family members, including his mother, father, and siblings. In fact, the claimant reported that he spends his day with his family members. Certainly, if the claimant were as limited as Dr. Johnson opined he would have more difficulties performing these activities than she noted. Moreover, Dr. Johnson determined that the claimant had no restrictions in understanding, following, and performing simple tasks, or making appropriate decisions. Aside from Dr. Johnson's findings, other records suggest that the claimant has no marked limitations in any area. Specifically, the claimant's treating physician, who had more than a one-time encounter with the claimant, noted that he had no more than moderate restrictions in any functional area.

There is an obvious incongruity between the ALJ's treatment of Dr. Brandt's opinion and his treatment of Dr. Johnson's opinion in that the ALJ afforded *great weight* to Dr. Brandt's opinions that were consistent with the record, but only afforded *partial weight* to Dr. Johnson's opinions meeting the same criteria. Nevertheless, it is difficult to see how rectifying that discrepancy would alter the ALJ's overall decision. Assuming the ALJ gave great weight, rather than partial weight, to the opinions of Dr. Johnson that are supported by the record – which we already know the ALJ has found to command a determination of not disabled – it would only bolster the ALJ's conclusion. Therefore, this was not reversible error, if it was error at all. See Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010) (finding remand "unnecessary" where there

was "no reasonable likelihood" that a new consideration "would have changed the ALJ's determination that Petitioner was not disabled").

Plaintiff further argues that "the ALJ ignored the evidence of Mr. Kelly's abnormal thought process, chronic paranoid ideation and fear others were out to harm him as noted by several of Mr. Kelly's psychiatrists." However, these are not limitations, but only clinical findings that have the potential to cause limitations. And more importantly, the ALJ did not ignore these clinical findings at all – he acknowledged from the start that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." But, ultimately, he found the "assertion that [the symptoms] restrict [plaintiff] from working in a manner consistent with his residual functional capacity lacks support from the medical record as a whole."

As this pertains to Dr. Johnson's opinion, the ALJ noted that Dr. Johnson found plaintiff to have no restrictions in understanding, following, performing simple tasks, maintaining attention and concentration, performing complex tasks, learning new tasks, or making appropriate decisions. In combination with Dr. Johnson's observations that plaintiff was capable of using public transportation on his own and engaging in frequent, appropriate social behavior with his family, the ALJ had more than enough reason to conclude that whatever "abnormal thought process, chronic paranoid ideation and fear" plaintiff exhibited was not sufficient to deem him incapable of work in the national economy.

IV.

Plaintiff last claims that the ALJ's "determinations regarding the RFC and other employment in the national economy were not based on substantial evidence." As to the RFC (residual functional capacity) contention, plaintiff faults the ALJ with ignoring "treatment notes

from medication management appointments between 2012 and 2017 . . . that showed Mr. Kelly's symptoms included abnormal thought process and chronic paranoid ideation."[2]

A claimant's RFC is "the most [he] can still do despite [his] limitations." 20 C.F.R. § 416.945(a). An ALJ will assess a claimant's RFC by considering "all of the relevant medical and other evidence." Id. If the Commissioner's decision is supported by "substantial evidence" and there are no other legal or procedural deficiencies, his decision must be affirmed. See Richardson v. Perales, 402 U.S. 389, 401-02 (1971). The substantial evidence standard requires that a decision be supported "by more than a mere scintilla" of evidence, or, otherwise stated, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 401 (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "[O]nce an ALJ finds facts, [a court] can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'" Brault v. Social Sec. Admin., Com'r, 683 F.3d 443, 448 (2d Cir. 2012) (quoting Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir. 1994)).

The ALJ ultimately concluded that "[w]hile there is little doubt that the claimant does suffer from the symptoms and effects of his impairments, I find that they are not debilitating to a degree that would preclude him from engaging in work activity." He based this determination on medical opinions, treatment notes, findings of fact made by state agency professionals, and the plaintiff's own testimony. I see no infirmity in the ALJ's decision.

According to plaintiff's testimony, he had just one mild seizure in the year leading up to his hearing, and he had been taking the same seizure medication for over 30 years with minimal attendant side-effects. Plaintiff graduated from high school; lives by himself; purchases and

---

[2] Plaintiff also suggests that the ALJ "ignored the opinions of treating sources Drs. Ogunlesi and Storch and therapist Celeste Cipriano" in reaching his decision. Because I've already discussed the ALJ's treatment of these sources in Section II, I do not rehash this portion of plaintiff's argument here.

11

prepares his own food; and has not been hospitalized for psychiatric reasons since the early 1980s. Plaintiff also likes to read and study history, and he regularly visits his family during the day. These all suggest that plaintiff's medical conditions do not significantly limit his day-to-day functionality.

As discussed in the previous sections, plaintiff's treatment notes suggest the same. Dr. Storch's notes reflect that plaintiff had a global assessment of functioning (GAF) score of 55, indicative of only moderate functional impairment. They also indicate that plaintiff was well groomed, cooperative, goal directed, and coherent, and that he exhibited "only mild" blocking. Dr. Luminita's treatment notes for August, September, October, November, and December 2014 all reflect that plaintiff was well groomed, made good eye contact, was alert, had normal speech and stable affect, was coherent, had normal memory, was well oriented, thought logically, and was not a danger to himself or others.

Dr. Luminita's January 2016 treatment notes appear even more optimistic, with only limited psychological symptoms affecting plaintiff at the time: "Patient was seen, chart reviewed. Maintains stable functioning. Reports stable mood. Continues to experience occasional paranoid ideation, patient is at baseline. Denies vegetative symptoms. He denies having thoughts of harming self or others. Reports compliance with medication – no side effects elicited." This self-reported, subjective evaluation by plaintiff largely undermines any suggestion that his symptoms significantly inhibit his ability to meet competitive standards.

Finally, plaintiff's contention that the ALJ ignored relevant information in determining there were sufficient jobs that he could perform in the national economy is likewise meritless. The information that plaintiff believes the ALJ wrongly omitted originates wholly from Dr. Ogunlesi's opinion – that plaintiff "continues to spend 2-3 hours to get himself ready to leave the

house"; that he "tends to hoard and to have trouble maintaining an organized environment"; that he spends most of his time alone, is socially isolated, does not initiate contact with others, and can be obsessive in his thinking or doing; and that it is "very difficult for [him] to act on his desires or goals." But the ALJ actually did take several of these factors into account in forming his hypothetical work criteria for the vocational expert:

> The claimant retains the mental RFC to perform unskilled work which would allow him to have *a regular work break approximately every two hours* . . . which does *not involve the performance of fast paced assembly work* . . . and where *interactions with others is limited* to occasional only.

(emphases added.) And in any event, "there is substantial record evidence to support the assumption[s] upon which the vocational expert based [her] opinion," as discussed above, while the record does not support the limitations that plaintiff claims are missing from the hypothetical. See McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014) (quoting Dumas v. Schweiker, 712 F.2d 1545, 1553-54 (2d Cir. 1983)).

## CONCLUSION

Plaintiff's [17] motion for judgment on the pleadings is denied and the Commissioner's [19] cross-motion for judgment on the pleadings is granted. The Clerk is directed to enter judgment, dismissing the case.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
       February 4, 2020